*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JAMES OLIVETTE EZELL, *et al.*,

        Plaintiffs,

    v.

JPMORGAN CHASE BANK NATIONAL ASSOCIATION, *et al.*,

        Defendants.

Civil Action No. 18-1407 (FLW) (DEA)

OPINION

---

**WOLFSON, Chief Judge:**

Before the Court are separate motions to dismiss filed by Defendants PennyMac Loan Services, LLC ("PennyMac") and JPMorgan Chase Bank National Association ("Chase") (collectively, "Defendants"), seeking dismissal of Plaintiffs James Olivette Ezell and Sonia Ezell's ("Plaintiffs") First Amended Complaint ("FAC") for lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. This case stems from a mortgage foreclosure action ("Foreclosure Action") that Chase brought against Plaintiffs in state court in 2008. Plaintiffs allege that Defendants engaged in fraudulent and deceptive conduct in relation to that Action, and bring federal claims, here, against Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e)(5); Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. 2601, *et. seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. 1601, *et. seq.*; Fair Housing Act ("FHA"), 42 U.S.C. §3601; and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691. Plaintiffs also bring the

1

following state law claims: violation of the New Jersey civil RICO statute, N.J.S.A 2C:41, *et seq.*; violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8- 2, *et seq*. ("CFA"); violations of N.J.S.A. 2C:20-7 (the crime of receiving stolen property); violations of N.J.S.A. 2C:21-17.3 (the crime of identity theft); declaratory relief pursuant to N.J.S.A. 12A:3-305 and N.J.S.A. 2A:50-56.1(a); fraud; unjust enrichment; negligent representation; fraudulent concealment; constructive fraud; civil aiding and abetting fraud; willful and wanton gross negligence; civil conspiracy to defraud; unlawful conversion; loss of consortium; defamation; harassment; and quiet title.

For the following reasons, Plaintiffs' federal claims are dismissed, with prejudice, as this Court lacks subject matter jurisdiction over Plaintiffs' RICO and FDCPA claims, and because all of these claims are barred by the applicable statues of limitations. Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Plaintiffs may, however, refile their state law claims in state court within 30 days of the date of the Order accompanying this Opinion, and the statutes of limitations for those claims would be tolled for that period.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the FAC and are assumed to be true for the purpose of deciding these motions. On November 18, 2003, Plaintiffs and Washington Mutual Bank ("WaMU") executed a $240,000 mortgage and promissory note related to a property in Asbury Park, New Jersey. FAC at ¶¶ 1, 13. Nearly five years later, on August 1, 2008, Plaintiffs defaulted on their payment obligations under the note. *Id.* at ¶¶ 20-21. Thereafter, when WaMU went into receivership in September of 2008, the Federal Deposit Insurance Corporation ("FDIC") assigned WaMu's assets to Chase, including the at-issue mortgage loan, through a

purchase and assumption agreement. *Id.* at ¶ 21. In December 2008, Chase then filed a complaint for foreclosure of Plaintiffs' mortgage in the Superior Court of New Jersey, Chancery Division, Monmouth County. *Id.* at ¶ 24.

In March 2014, while the Foreclosure Action was pending, Chase notified Plaintiffs that their mortgage loan had been assigned to PennyMac. *Id.* PennyMac sent Plaintiffs a letter on April 10, 2014, notifying them of the servicing transfer. *Id.* On October 13, 2016, after granting summary judgment against Plaintiffs, the Superior Court entered final foreclosure judgment. *Id.* at ¶ 60. Before a sheriff's sale could take place, however, James Ezell filed for Chapter 13 bankruptcy on December 17, 2016, in the Southern District of Alabama. *Id.* at ¶ 63. On December 30, 2016, after the bankruptcy filing, the Superior Court of New Jersey dismissed, without prejudice, all claims against Plaintiffs in the Foreclosure Action pending the resolution of the Bankruptcy Action, on the basis of the automatic stay provision of Section 362(a) of the Bankruptcy Code *Id.* at ¶ 64, Compl., Ex. HH.

On January 31, 2018, Plaintiffs filed the Complaint in the present action and filed the FAC on December 4, 2018, bringing twenty-two federal and state claims, alleging that Defendants used unfair, deceptive and unlawful practices—namely, pursuing the Foreclosure Action while falsely claiming that they owned the subject loan—to win a final foreclosure judgment against Plaintiffs. *See, e.g.,* FAC at ¶¶ 25, 44. In that regard, Plaintiffs allege that WaMu, Chase, and PennyMac altered documents, including the original mortgage, to make it appear that they were the rightful owners of the mortgage loan, and submitted knowingly false and fraudulent documents to the state court in the underlying Foreclosure Action. *Id.* Plaintiffs also make an assortment of additional allegations, including that Chase never provided Plaintiffs a required TILA Notification of Assignment, Sale, and Transfer of Ownership, and that

3

PennyMac never responded to Plaintiffs' Qualified Written Request in 2014. *Id.* at ¶¶ 27, 170. Plaintiffs also assert that WaMU, which is not a party to this action, discriminated against Plaintiffs, who are minorities and disabled, in the execution of the original mortgage in 2003. In that regard, Plaintiffs argue that WaMU "willfully steered" Plaintiffs into signing a purportedly fraudulent and unconscionable mortgage loan with "predatory and high-cost terms," while at the same time "withholding from the Plaintiffs other financing options consisting of better terms and conditions" offered to white and non-disabled persons. *Id.* at ¶ 182.

In late 2018 and early 2018, Defendants separately moved to dismiss the FAC for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. ECF Nos. 29 and 33. Rather than rule on these motions, on May 3, 2019, this Court issued an Order staying and administratively terminating the matter pending the resolution of the Bankruptcy Action. ECF No. 35. After counsel for PennyMac informed the Court on June 19, 2019, that the United States Bankruptcy Court for the Southern District for Alabama had lifted the automatic stay, the Court reinstated the matter and relisted the pending motions to dismiss. ECF No. 37.

## II. **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Because subject matter jurisdiction is required for a district court to reach the merits of a claim, "the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Bishop v. Department of Homeland Sec.*, No. 14-5244, 2015 WL 2125782, at * 2 (D.N.J. May 6, 2015). Unlike a Rule 12(b)(6) motion, there is no presumption of truth attached to the allegations in the complaint

when determining the court's subject matter jurisdiction. *See id.*; *see also Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F. 2d 884, 891 (3d Cir. 1977).

A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics, Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). A facial attack, such as in this case, "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because ... it does not present a question of federal law ...". *Constitution Party of Pennsylvania v. Aichele*, 757 F. 3d 347, 358 (3d Cir. 2014). In that regard, the court views only the allegations in the pleadings in the light most favorable to the plaintiff. *U.S. ex Rel. Atkinson v. PA. Shipbuilding Co.*, 473 F. 3d 506, 509 (3d Cir. 2007).

Defendants also move to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

5

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

Under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

## III. DISCUSSION

Defendants move to dismiss on several grounds, including that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, the entire controversy doctrine, judicial estoppel, *res judicata* and/or collateral estoppel, and *Colorado River* abstention. They also argue that

6

Defendants have failed to state any claim for relief and that many of Plaintiffs' claims are barred by the applicable statutes of limitations. Rather than contest these arguments on their merits, Plaintiffs have submitted an omnibus response to Defendants' Motions that is devoid of *any* legal argument, consisting merely of numbered paragraphs describing exhibits attached to the filing. Before turning to Defendants' Motions, I note that a plaintiff who is represented by counsel concedes a claim when he fails to oppose arguments in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *O'Neal v. Middletown Twp.*, No. 18-5269, 2019 WL 77066, at * 3 (D.N.J. Jan. 2, 2019); *see also Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005). For that reason alone, all of Plaintiffs' claims may be dismissed. Nevertheless, numerous of Defendants' arguments for dismissal are also valid, including that the *Rooker-Feldman* doctrine divests this Court of jurisdiction over certain of Plaintiffs' federal claims, and that the remainder of Plaintiffs' federal claims are time-barred. For the reasons that follow, I, therefore, dismiss Plaintiffs' federal claims as barred by the *Rooker-Feldman* doctrine and/or the applicable statutes of limitations, and decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

### A. Federal Claims

Plaintiffs brings federal claims for violation of the federal civil RICO statute, the FDCPA, TILA, RESPA, the FHA, and the ECOA. Because Plaintiffs' RICO and FDCPA claims are barred by the *Rooker-Feldman* doctrine, and all of these claims are premised on conduct that occurred outside of the applicable statutes of limitations, all of Plaintiffs' federal claims will be dismissed.

### 1. *Rooker-Feldman*

As an initial matter, this Court lacks subject matter jurisdiction over Plaintiffs' FDCPA and federal civil RICO claims under the *Rooker-Feldman* doctrine. "The *Rooker–Feldman* doctrine strips federal courts of jurisdiction over controversies that are essentially appeals from state-court judgments." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (internal quotation marks and citation omitted). Stated differently, "*Rooker–Feldman* ... is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (internal quotation marks and citation omitted); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In order for the *Rooker–Feldman* doctrine to deprive a federal court of subject matter jurisdiction, the Third Circuit has held that four requirements must be satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (citing *Exxon Mobil Corp.*, 544 U.S. at 284). The Third Circuit has explained that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim," or whether the newly raised claims are so inextricably intertwined that a "favorable decision in federal court would require negating or reversing the state-court decision." *Great W. Mining & Mineral Co.*, 615 F.3d at 165, 170 n.4; *see In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009); *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005).

Here, at the outset, the Court finds that the first and third requirements of *Rooker–Feldman* are easily satisfied. Plaintiffs' interest in the property was relinquished on October 13, 2016, when the state court entered a final judgment of foreclosure against them.[1] Instead of filing an appeal in state court, Plaintiffs, in response, brought this action against Defendants on January 31, 2018, approximately eight months after the state court rendered a decision. Accordingly, the state court judgment was clearly issued prior to the filing of this suit in federal court, and, because Defendants obtained a judgment of foreclosure, Plaintiffs are state court losers. *See Great W. Mining & Mineral Co.*, 615 F.3d at 166.

With respect to the second and fourth requirements, the Third Circuit has found that the *Rooker–Feldman* doctrine applies when a mortgagor challenges the judgment in his or her New Jersey foreclosure action. *See In re Madera*, 586 F.3d 228, 232 (3rd Cir. 2009) (when confronted with a post-foreclosure federal claim for rescission of a mortgage, the Third Circuit held that the rescission claim was inextricably intertwined with the state court's foreclosure judgment, since "a favorable decision for the [plaintiff] in the federal courts would prevent the [state court] from enforcing its order to foreclose the mortgage."); *In re Knapper*, 407 F.3d at 581 (a federal claim for absence of personal jurisdiction in the underlying state court action is barred by *Rooker–Feldman* because plaintiff "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained."); *see also Great W. Mining & Mineral Co.*, 615 F.3d at 170 n.4.

The Third Circuit has explained that a court must examine the gravamen of the complaint to determine whether the "claims are in essence an attack on the state court judgment

---

[1] Although the state court dismissed the Foreclosure Action pending the resolution of the Bankruptcy proceeding, there is no indication or allegation that the court ever vacated the final judgment.

of foreclosure." *Gage v. Wells Fargo Bank, N.A.*, 521 Fed. Appx. 49, 51 (3d Cir. 2013) (concluding that the plaintiff cannot evade the *Rooker–Feldman* doctrine, since the "complaint reveals the nature of [the plaintiff's] claims against Wells Fargo: the bank had no right to foreclose on the property and therefore committed 'criminal acts' by enforcing the foreclosure judgment ...."); *see In re Madera*, 586 F.3d at 232. In fact, courts in this district have consistently found that the *Rooker–Feldman* doctrine prohibits claims in a federal action that challenge the validity of the mortgage or the right to foreclose, since such claims effectively seek to negate or reverse the state court judgment of foreclosure. *See Dunbar v. Nationstar Mortg.*, LLC, No. 16–4259, 2016 WL 6804874, at *2 (D.N.J. Nov. 16, 2016) (holding that the court lacked subject matter jurisdiction, since "*Rooker–Feldman* prohibits the Court from exercising jurisdiction over Plaintiff's statutory and common law claims challenging the validity of the loan agreement and Defendants' right to foreclose."); *Lewis v. PennyMac Corp.*, No. 16–1514, 2016 WL 2901707, at *3 (D.N.J. May 18, 2016) (concluding that the court did not have jurisdiction, under the *Rooker–Feldman* doctrine, because "[t]he gravamen of Plaintiff's Complaint is that Defendants had no right or standing to foreclose on the Property."); *Siljee v. Atl. Stewardship Bank*, No. 15–1762, 2016 WL 2770806, at *5 (D.N.J. May 12, 2016) (holding that the *Rooker-Feldman* doctrine barred a breach of contract claim because "[i]ts essence ... is that the mortgage is invalid or that Atlantic had no standing to assert it.").

As Plaintiffs have not submitted an opposition brief, and the FAC is long, rambling, and difficult to parse, the Court has done its best to determine the gravamen of Plaintiffs' claims from the FAC and the exhibits that Plaintiffs submitted in lieu of an opposition brief. Both Plaintiffs' FDCPA and RICO claims appear to be premised on Defendants' alleged use of "unfair – deceptive – unlawful practices" in order to "steal the Plaintiff's property and extort monies

from an unlawful debt, using forged and falsely acknowledged instruments, misrepresentations and concealment." FAC at ¶ 2. In that regard, Plaintiffs allege that neither Chase nor PennyMac ever owned the subject loan, but, nonetheless, used false representations and deceptive means to collect the debt by willfully misrepresenting themselves to be "owners and holders" of the debt. *Id*. ¶ 25, ¶ 44.

These allegations attack the very heart of the state court foreclosure judgment. Under New Jersey law, a final judgment in a foreclosure action cannot be issued, unless each of the following requirements are satisfied: (1) the note and mortgage are valid; (2) a default occurred; and (3) the defendant has the right to foreclose (which would include its standing by assignment or otherwise). *Siljee*, 2016 WL 2770806, at *6 (citing *Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394 (N.J. Super. Ct. Ch. Div. 1993)). In light of these foreclosure requirements, Plaintiffs' allegations that Defendants never lawfully owned the debt go to the heart of whether Defendants had the right to foreclose, thus attacking a finding that the state court necessarily made in reaching its final judgment. Thus, Plaintiffs' FDCPA and federal RICO claims are barred because they undermine the state court's judgment, *i.e.*, that Defendants had the right to foreclose on the property.[2]

---

[2] In arguing that this Court lacks subject matter jurisdiction, Chase also relies on a Second Circuit case, *Rajamin v. Deutsche Bank Nat. Tr. Co*., 757 F.3d 79, 83 (2d Cir. 2014), to argue that Plaintiffs lack constitutional standing to bring claims premised on an argument that Defendants never owned the loan. This argument is misplaced, however. In *Rajamin*, the plaintiff sought only a declaratory judgment that Defendants did not own the subject loan, and their sole alleged injury was that Defendants attempted to collect on a loan they did not own. *Id.* The Second Circuit ruled that there was no standing because the plaintiffs had not pled that they were in any way injured by the Defendants' non-ownership of the loan, such as by being forced to pay defendants more than the amounts due. That is not the case here: the basis for Plaintiffs' alleged injury is not simply that Defendants did not own the subject loan, but that Defendants engaged in fraudulent or otherwise deceptive practices in continuing to represent that they owned the loan, which injured Plaintiffs by, for example, forcing them defend themselves in the

## 2. Statutes of Limitations

In addition to *Rooker-Feldman* barring the RICO and FDCPA claims, all of Plaintiffs' federal claims—including those not appearing to attack the validity of the state court judgment—are time-barred.

First, Plaintiffs' FDCPA claim, even were it not barred by *Rooker-Feldman*, is untimely. An action under that statute must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Where FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation, the FDCPA's one-year statute of limitations begins to run upon filing the underlying collection action or upon the date on which the purported debtor was served with the complaint. *Schaffhauser v. Citibank (S.D.) N.A.* 340 F. App'x 128, 130–31 (3d Cir. 2009) (noting circuit split as to accrual of statute of limitations upon filing or service of the complaint). In the present matter, Plaintiffs' FDCPA claims arise out of Defendants' allegedly fraudulent actions in commencing and pursuing the Foreclosure Action. Because that Action was filed and served in 2008, Plaintiffs' FDCPA claim is clearly untimely.

The same goes for Plaintiffs' federal civil RICO claims. RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Although the RICO statute does not expressly provide a statute of limitations, the Supreme Court, by analogy to the Clayton Act, has established a four-year limitations period for civil RICO claims. *Agency Holding Corp. v. Malley–Duff & Assoc. Inc.,* 483 U.S. 143, 156

---

foreclosure action. While Plaintiffs' claims are otherwise dismissed for the reasons outlined in this Opinion, there is nothing speculative or hypothetical about such an alleged injury.

(1987). In determining when a RICO claim accrues, the Third Circuit applies the discovery rule, "whereby a RICO claim accrues when plaintiffs knew or should have known of their injury." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006). A claim does not accrue until a reasonably diligent plaintiff would have discovered the violation. *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). In the present matter, Plaintiffs allege deceptive behavior on behalf of Defendants going all the way back to 2008, when Chase began allegedly falsely representing itself as the owner of the mortgage loan. As Plaintiffs were aware of these actions at the time, and, in fact, contested this claim to ownership in the underlying Foreclosure Action, Plaintiffs' RICO claim is barred by the statute of limitations.[3]

Plaintiffs also bring a single count under both the ECOA and FHA. The FHA was enacted to further "the policy of the United States to provide…for fair housing throughout the United States," and prohibits housing discrimination on the basis of race, religion, sex, familial status, and disability. 42 U.S.C. §3601. Similarly, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ...on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a); *In re Chiang,* 385 F.3d 256, 259 (3d Cir. 2004). Claims for violations of the FHA are subject to a two-year statute of limitations, running from the date of the alleged injury. 42 U.S.C. §3613;

---

[3] In their RICO count, Plaintiffs also cite predicate crimes that allegedly occurred in 2015, 2017, and 2018. However, as the Supreme Court has ruled, the RICO statute of limitations does not begin to run from the time that the plaintiff knew or should have known of the last predicate act of the alleged pattern of racketeering. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997). As the Supreme Court explained, such a rule "would permit plaintiffs who know of the defendant's pattern of activity simply to wait, sleeping on their rights as the pattern continues and treble damages accumulate, perhaps bringing suit only long after the memories of witnesses have faded or evidence is lost." *Id.* (citations and quotations omitted). Thus, the fact that the alleged date of the last predicate act was within four years of the date the Complaint, does not save Plaintiffs' RICO claims from being time-barred, when they knew or should have known of Defendants' conduct well beyond the statute of limitations period.

*Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 31 (3d Cir. 1995). Although the ECOA was amended in 2011 to impose a five-year statute of limitations, in 2003, the year that alleged ECOA violation took place, the statute imposed a two-year statute of limitations. *Compare* 15 U.S.C. § 1691e(f) (1991) *with* 15 U.S.C. § 1691e(f) (2011) (five-year statute of limitations); *see also Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 487 (E.D. Pa. 2014) (applying ECOA's two-year statute of limitations to claims based on injuries that took place prior to 2011). In the present matter, Plaintiffs argue that, in 2003, WaMU "willfully steered" Plaintiffs, who are minorities and disabled, into signing a purportedly fraudulent and unconscionable mortgage loan with "predatory and high-cost terms," while at the same time "withholding from the Plaintiffs other financing options consisting of better terms and conditions" offered to non-minority and non-disabled persons. FAC at ¶ 182. Setting aside that neither Chase nor PennyMac are alleged to have been involved in the mortgage sale or origination, FHA and ECOA claims brought in 2018 cannot be premised on events that occurred in 2003. Thus, these claims, too, are time-barred and must be dismissed.

Finally, Plaintiffs allege that Defendants violated TILA and RESPA. TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). In a similar vein, RESPA imposes a duty upon loan servicers to respond to certain inquires by customer borrowers. 12 U.S.C. § 2605(e)(1)(A). RESPA requires that, upon "receipt" of a Qualified Written Request ("QWR"), a loan servicer must "provide the borrower with a written explanation" that includes "a statement of reasons for which the servicers believes that the account is correct." 12 U.S.C. § 2605(e)(2)(B). TILA's statute of limitations for violations of its

14

disclosure requirements is one year and runs from the date of the alleged violation, 15 U.S.C. § 1640(e), while RESPA provides three years to bring any action pursuant to the provisions of Section 2605. 12 U.S.C. § 2614. Here, although not entirely clear from the FAC, Plaintiffs seemingly allege that Chase violated TILA by not providing them with a "Notice of Sale / Transfer of Ownership" in 2009. FAC at ¶ 25. They also seemingly allege that PennyMac violated RESPA by not responding to their QWR in 2014. Because Plaintiffs brought suit well beyond these statutes' one and three-year limitation periods, these claims are also time barred. Thus, as each of Plaintiffs' federal claims are filed untimely, all are dismissed.

### B. Supplemental Jurisdiction

With Plaintiffs' federal claims—the bases for this Court's subject matter jurisdiction—having been dismissed, I am left with a discretionary choice as to whether I will retain supplemental jurisdiction, under 28 U.S.C. § 1367, over the FAC's various state law claims. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726, 86 S.Ct. 1130; *Growth Horizons, Inc.*, 983 F.2d at 1284–1285. Here, the Court has dismissed the federal claims at the earliest possible stage of the proceedings and exercises its discretion to decline supplemental jurisdiction at this time. *See Anderson v. ZFC Legal Title Tr. I*, No. 16-1499, 2016 WL 7408846, at *5 (D.N.J. Dec. 22, 2016) (declining to exercise supplemental jurisdiction over state claims in homeowner's case against mortgage lender, noting that to do so "would be intruding into the specialized area of mortgage foreclosure which is already before the Superior Court of New Jersey; this federal court would be called upon to duplicate or interfere with the ongoing state foreclosure proceedings"). Pursuant to 28 U.S.C § 1367(d), however, Plaintiffs are free to bring their state law claims in state court within 30 days of the date of the Order accompanying this Opinion, and the statutes of limitations for those claims would be tolled for that period. *See, e.g., Hedges v. Musco*, 204 F.3d 109 (3d Cir. 2000). This tolling would, of course, not affect any statute of limitations that has already run.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' federal claims are dismissed, with prejudice, as this Court lacks subject matter jurisdiction over Plaintiffs' federal RICO and FDCPA claims, and because all of these federal claims are untimely. Moreover, the Court declines to exercise supplemental jurisdiction over any remaining state law claims. Plaintiffs may, however, bring their state law claims in state court within 30 days of the date of the Order accompanying this Opinion.

Dated:  January 31, 2020                                    /s/ Freda L. Wolfson
                                                            Hon. Freda L. Wolfson
                                                            United States Chief District Judge